In the Matter of ELAINE DeFAY, Respondent, v CITY OF NEW YORK ENVIRONMENTAL CONTROL BOARD, Appellant.

First Department, January 23, 1986

### APPEARANCES OF COUNSEL

*Trudi Mara Schleifer* of counsel *(Francis F. Caputo* with her on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for appellant.

*Morgan Kennedy* of counsel *(Leonard Goldstein,* attorney), for respondent.

### OPINION OF THE COURT

MILONAS, J.

Petitioner is the owner of the premises at 285 Fountain Avenue in Brooklyn. Although she purchased the building in December of 1977, no one lived there from that date until December of 1981 when renovation work was completed. Petitioner had resided at 278 Fountain Avenue since 1973 and also owned the premises at 289 Fountain Avenue but claims to have sold this latter property in February of 1979. Between March 27, 1980 and December 31, 1981, the New York City Department of Sanitation issued 14 notices of violation of the sanitation provisions of the Administrative Code of the City of New York against the premises at 285 Fountain Avenue. The notices of violation were affixed to the building, and additional copies were thereafter mailed to that address. This procedure was in accordance with the provisions of New York City Charter § 1404 (d) (2). Moreover, copies of the notices were also mailed to 289 Foun-

tain Avenue, which respondent claims was listed under petitioner's name in the owner registration files of the New York City Department of Housing Preservation and Development and the tax files of the New York City Department of Finance. None of the notices were ever returned as undelivered.

Petitioner failed to pay the fines imposed as a result of the violations or to otherwise respond to the notices. Consequently, the matter was assigned to a collection agency, and claim letters were sent on several occasions to petitioner at both 285 Fountain Avenue and 289 Fountain Avenue. When no answer was forthcoming from the petitioner, second notices were mailed out. These letters were also not returned by the post office, nor was the collection agency advised of a change of address. Thereafter, on or about May 19, 1982, the city Sheriff sent petitioner a notice of levy regarding the violations. The notice, which was mailed to the same two addresses and which petitioner admits to receiving, states that she was required to pay a total of $3,175.88 within five days. Petitioner then obtained an order to show cause why respondent should not be compelled to grant her a hearing on the alleged violations, vacate the fines and stay the proceedings against petitioner's property. Following stipulation of the parties, Special Term transferred venue of the case from Kings County to New York County. Petitioner, in the meantime, had reacquired title to the premises at 289 Fountain Avenue.

By motion dated January 12, 1983, petitioner applied for an order granting her a new hearing, vacating the fines assessed and staying execution against her property. Special Term denied the motion, holding that petitioner was limited to seeking relief by means of a CPLR article 78 proceeding, but that she first had to exhaust her administrative remedies. She, therefore, requested that respondent provide her with a hearing concerning her contention that she had never received any of the notices and that the first indication that there were violations against her was the Sheriff's notice of impending levy and sale. When respondent declined to grant the hearing, declaring that the permissible period for moving for a stay of default had expired, petitioner commenced the instant proceeding in December of 1983. In its answer, respondent argued that the notices of violation had all been served by the so-called "nail and mail" method authorized by New York City Charter § 1404 (d) (2) and that the notices of violation and default were all sent to the place of occurrence, 285 Fountain Avenue, as well as to petitioner as record owner of the premises at 289 Fountain Avenue. The collection letters were similarly mailed. None of this correspondence was, respondent

asserted, ever returned as undelivered, and, moreover, there is no requirement in the law that notices of violation or default be mailed to the owner's residence. However, Special Term, deeming the application as a motion under CPLR 5015 (a) (4) to vacate the default judgments, held that respondent lacked jurisdiction to find petitioner liable in that the "nail and mail" service provided for in the New York City Charter referred only to premises the occupancy of which caused the violation. In the view of the court, since the subject building was not occupied at the time, service had to be effected pursuant to CPLR 308. Although the court subsequently granted reargument, it adhered to its original determination.

According to New York City Charter § 1404 (d) (2), service must be made:

"in the same manner as is prescribed for service of process by article three of the civil practice law and rules or article three of the business corporation law, except that * * *

"(ii) service of a notice of violation of any provision of the charter or administrative code, the enforcement of which is the responsibility of the commissioner of sanitation and over which the environmental control board has jurisdiction, may be made by affixing such notice in a conspicuous place to the premises, the occupancy of which caused such violation.

"[Provided that] [s]uch notice may only be affixed or delivered * * * where a reasonable attempt has been made to deliver such notice to a person in such premises upon whom service may be made as provided for by article three of the civil practice law and rules or article three of the business corporation law. When a copy of such notice has been affixed or delivered, pursuant to [this paragraph], a copy shall be mailed to the person at the address of such premises".

While it is true that at the time of service of the notices of violation, petitioner was not actually in residence at 285 Fountain Avenue, the statute mandates that there be occupancy, not residency. In that connection, occupancy and residency are not synonymous. Occupancy may, of course, include residency but it also means actual possession. Certainly, there is no basis for the unduly restrictive construction adopted by Special Term. The building at 285 Fountain Avenue was not abandoned, vacant or otherwise unused. It was in the process of undergoing renovation by persons employed by petitioner, and their physical presence at that site was under her direction and control. Among the definitions of the word "occupancy" cited in Webster's Collegiate Dictionary is the "act of taking and holding possession * * * use to which property is

put." By any measure, it was the use to which the premises at 285 Fountain Avenue were put that resulted in the sanitation violations in question. Thus, service could properly be effected by affixing the notice "in a conspicuous place to the premises, the occupancy of which caused such violation".

A reasonable interpretation of section 1404 (d) (2) permits "nail and mail" service of notices of sanitation provisions regardless of whether or not the premises actually have people living in them. So long as an owner is in possession or control of the premises, that owner is in occupancy within the meaning of the statute. In the instant situation, petitioner admits to having her agents present on the property in the course of performing renovation work. Moreover, an interpretation of section 1404 (d) (2) which would require the owner to actually reside in the premises would, in the current real estate market, be unrealistic and unreasonable and would allow "nail and mail" service for sanitation violations in a very limited number of cases. The constitutional standard for evaluating the adequacy of notice is that it be "reasonably calculated" under all the circumstances to inform interested parties of the pendency of an action and afford them an opportunity to be heard. *(Mullane v Central Hanover Trust Co.,* 339 US 306, 314-315.) The system of process employed herein was clearly "reasonably calculated" to give notice to petitioner and other persons similarly situated who, although the owners of premises which have had violations issued against them, may not be present to receive personal service. It is, in fact, the difficulty inherent in effecting service upon such individuals which necessitated the enactment of the "nail and mail" procedure in the first place.

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Richard W. Wallach, J.), entered on October 30, 1984, which, *inter alia,* vacated the default judgments entered against petitioner and held that respondent Environmental Control Board lacked jurisdiction to adjudicate her liable for certain sanitation code violations, should be reversed, on the law, and the default judgments reinstated, without costs or disbursements.

SANDLER, J. P., FEIN, ROSENBERGER and ELLERIN, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered on October 30, 1984, unanimously reversed, on the law, and the default judgments reinstated, without costs and without disbursements.